UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CUSTOM COMPOUNDING LLC
d/b/a PLYMOUTH MEDICAL, a
New York limited liability
company,

      Plaintiff,

v.                             Case No.:  2:26-cv-727-SPC-NPM

EMCYTE CORPORATION, a
Florida corporation,

        Defendant.

_____

## **OPINION AND ORDER**

Before the Court is the Plaintiff Custom Compounding Medical LLC d/b/a Plymouth Medical's Motion for Temporary Restraining Order and Preliminary Injunction.  (Doc. 10).  Plymouth Medical has moved, under Federal Rule of Civil Procedure 65 and Local Rule 6.01 of the United States District Court for the Middle District of Florida, for an emergency temporary restraining order and a preliminary injunction against Defendant EmCyte Corporation, enjoining EmCyte and all persons in active concert or participation with them, from using, disclosing, disseminating, or otherwise continuing to exploit Plymouth Medical's trade secrets and proprietary confidential business information ("Trade Secret Information").  For the

following reasons, the Court grants that portion of the motion requesting a temporary restraining order and defers ruling on the request for a preliminary injunction.

## Background

Plymouth Medical's motion is supported by the Declaration of its Principal, Jo-An Tremblay, who founded Plymouth Medical in 2011. (Doc. 12). Tremblay also verified the First Amended Complaint. (Doc. 9). Based on the Declaration, Plymouth Medical is a distributor of products manufactured by EmCyte. (Doc. 12 ¶ 10). From approximately July 2022 through about March 10, 2026, Arianne Pinacate served as a contractor for Plymouth Medical. (*Id.* ¶ 17).

On March 9, 2026, Plymouth Medical's server logs show that Pinacate's password-protected email account was used to download Plymouth Medical's Trade Secret Information, including its client lists. (*Id.* ¶ 23). Plymouth Medical takes reasonable measures to protect the secrecy of this Trade Secret Information, including its client lists. (*Id.* ¶ 14). At 1:00 a.m. on March 10, 2026, Pinacate emailed Tremblay and another representative of Plymouth Medical to resign effective immediately, stating, "I have accepted a new opportunity that allows me to grow both financially and professionally." (*Id.* ¶ 26).

Seven hours later, at approximately 10:00 a.m. on March 10, 2026, Plymouth Medical received a Cease and Desist Notice from EmCyte asserting that Plymouth Medical was prohibited from continuing to distribute EmCyte products. (*Id.* ¶ 33). Within hours of sending the Cease and Desist Notice, EmCyte sent an unsolicited email blast to what appeared to be Plymouth Medical's entire master client list. (*Id.* ¶ 36). The email blast went to clients whose contact information is not publicly available and to numerous clients with whom EmCyte had never previously done business. (*Id.* ¶¶ 36–37). The email blast included clients located outside the United States, including clients in Europe who had never purchased EmCyte products. (*Id.* ¶ 38). EmCyte's email invited Plymouth Medical's clients to purchase products directly from EmCyte and promised "discounted rates for customers previously purchasing through Plymouth Medical." (*Id.* ¶ 39). Several Plymouth Medical clients forwarded the email to Tremblay shortly after receiving it. (*Id.* ¶ 40).

Based on Tremblay's knowledge of Plymouth Medical's business and client data, EmCyte could not have obtained this client list through legitimate or independent means. (*Id.* ¶ 41). As a result of EmCyte's email blast, Plymouth Medical has already lost clients and continues to lose customer relationships and goodwill. (*Id.* ¶ 42). Some clients accepted EmCyte's misrepresentations as true and immediately severed their relationships with Plymouth Medical. (*Id.* ¶ 43). EmCyte has also disseminated the Trade Secret

3

Information to other distributors—*i.e.*, Plymouth Medical's direct competitors—and invited them to directly solicit Plymouth Medical's clients (*Id.* ¶ 44). For example, Marissa Guyan of EmCyte has invited Steve Whyte of Accelerated Biologics to market to Plymouth Medical's clients. (*Id.*). Each additional dissemination or solicitation compounds the harm and erodes Plymouth Medical's client base. (*Id.* ¶ 45). The loss of customer relationships, goodwill, and competitive position threatens Plymouth Medical's continued viability as a business. (*Id.* ¶ 47).

### Legal Standard

To obtain a temporary restraining order or a preliminary injunction, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) entry of this relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

In addition to the usual requirements for injunctive relief, a district court may issue an *ex parte* temporary restraining order only if "(A) specific facts in

an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

## Analysis

The Court finds that Plymouth Medical has satisfied the requirements for purposes of obtaining narrow temporary protective relief to preserve the status quo until such time as a preliminary injunction hearing can be held.

## A.    Likelihood of Success on the Merits

For purposes of temporary protective relief, Plymouth Medical has shown a substantial likelihood of success on the merits through its submission of evidence that its contractor illicitly obtained Trade Secret Information, including a master client list, immediately before resigning. The next day, EmCyte used the information to solicit Plymouth Medical's clients, including numerous clients with whom EmCyte had no prior relationship. Plymouth Medical has established that it takes reasonable measures to protect the secrecy of this Trade Secret Information, including its client lists. As it relates to counts in Plymouth Medical's First Amended Verified Complaint, Plymouth Medical satisfies the requirements for its claims under misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA") (count

5

II); misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") (count III); and civil conspiracy (count IV).

### 1.   *FUTSA*

To prevail on a FUTSA claim, a plaintiff must establish: (1) it possessed a trade secret and took reasonable steps to protect its secrecy, and (2) the trade secret was misappropriated by one who knew or had reason to know it was improperly obtained or who used improper means to obtain it. *See* Fla. Stat. §§ 688.002 and .003; *Mapei Corp. v. J.M. Field Mktg., Inc.*, 295 So. 3d 1193 (Fla. Dist. Ct. App. 2020); *Del Monte Fresh Prod. Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).   Plymouth Medical meets both requirements.

Under the FUTSA, a trade secret is defined as information that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4). The Trade Secret Information— including Plymouth Medical's master client list with private contact information, historical pricing, sales-pipeline data, consignment-account details, and a strictly confidential Order Log—has independent economic value, given it is not generally known, reflects more than a decade of business-

development effort, and gives Plymouth Medical a competitive advantage. The Trade Secret Information, therefore, constitutes a trade secret under the FUTSA.

Plymouth Medical also took reasonable measures to protect this information: it used password-protected systems, restricted access on a need-to-know basis, implemented a written "Trade Secrets and Inventions" policy, and marked key documents as "Strictly Confidential."

At this early stage, the record of EmCyte's knowing misappropriation is strong. The timeline speaks for itself. EmCyte called another one of Plymouth Medical's employees, asking about the employee's status with Plymouth Medical less than two weeks prior to Pinacate downloading the Trade Secret Information and then resigning immediately thereafter. Mere hours after Pinacate's resignation, EmCyte sent an unsolicited email blast to Plymouth Medical's clients—including clients EmCyte had never previously contacted, clients outside the United States who have never purchased EmCyte's products, and clients with otherwise private email addresses that cannot be found online.

The timing and scope of this solicitation leaves no plausible explanation other than that EmCyte used Plymouth Medical's misappropriated Trade Secret Information, smuggled by Pinacate, to execute the campaign. *See Forbes v. Millionaire Gallery, Inc.*, 335 So. 3d 1260 (Fla. Dist. Ct. App. 2022)

(affirming trade secret misappropriation verdict where defendants solicited clients from former employer's confidential list); *see also Mapei*, 295 So. 3d at 1200–01 (Fla. Dist. Ct. App. 2020) (finding that competitor "knew or should have known" it was accessing trade secrets based on circumstantial evidence of access to password-protected systems and confidentiality requirements). This second element is, therefore, also satisfied. Accordingly, Plymouth Medical has shown a substantial likelihood of success with respect to its FUTSA claim.

    2.    *DTSA*

Under the DTSA, a plaintiff must establish three elements: (1) the plaintiff owned a qualifying trade secret; (2) the defendant misappropriated that trade secret; and (3) the misappropriated trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1); *WWMAP, LLC v. Birth Your Way Midwifery*, 711 F. Supp. 3d 1313, 1318–19 (N.D. Fla. 2024). The Eleventh Circuit has confirmed that the DTSA "creates a federal cause of action that largely mirrors FUTSA" and that "the substantive standard for misappropriation is identical under FUTSA and DTSA." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020).

As set forth above in connection with the FUTSA claim, Plymouth Medical satisfies the first two elements. *See also* 18 U.S.C. § 1839(6) (defining

8

"improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means"). Plymouth Medical also satisfies the third element, the interstate commerce nexus, which courts have broadly interpreted as presenting "a relatively low threshold for federal jurisdiction." Plymouth Medical distributes medical devices throughout the United States and Canada, using interstate wire communications, electronic purchase orders, invoices, and shipping confirmations transmitted between New York, Florida, and other states and countries, and the Trade Secret Information relates directly to those distribution activities. Besides, EmCyte's email blast went to all of these clients throughout both the country and beyond. Accordingly, having established all three elements, Plymouth Medical has demonstrated a substantial likelihood of success on the merits of its DTSA claim.

### 3. Civil Conspiracy

Under Florida law, a civil conspiracy requires proof of: (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to the plaintiff as a result. *See Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997).

As stated, the timeline speaks for itself and provides proof of the agreement between EmCyte and Pinacate to misappropriate Plymouth

9

Medical's Trade Secret Information, which Pinacate downloaded just hours before she abruptly resigned. The evidence of these acts and their timing satisfies the first three elements. And the fourth element is satisfied because Plymouth Medical has already lost clients and revenue therefrom as a result of the unsolicited email blast EmCyte sent just hours after Pinacate's theft and resignation. As such, Plymouth Medical has demonstrated a substantial likelihood of success on the merits of its civil conspiracy claim.

In sum, Plymouth Medical has shown a substantial likelihood of success with respect to each of the three claims that relate to the motion.

## B.    Irreparable Injury

For purposes of temporary protective and injunctive relief, Plymouth Medical has also sufficiently established that it will suffer irreparable injury if the requested relief is not granted. According to Plymouth Medical's verified statements, EmCyte's exploitation of the Trade Secret Information—namely, its unsolicited email blast—has already resulted in some clients severing their relationship with Plymouth Medical. EmCyte's dissemination of the Trade Secret Information to Plymouth Medical's competitors, and its invitation for those distributors to directly solicit Plymouth Medical's clients, constitutes an imminent threat of additional harm. *See Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1278–79 (M.D. Fla. 2020) (finding irreparable harm where former employee was "privy to [plaintiff's] most sensitive information

about its clients, business strategies, territory plans, financial performance, pricing, costs, and other business metrics" and plaintiff risked "losing customers, goodwill, and market competitiveness"); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1559 (S.D. Fla. 1992), *aff'd sub nom.,* 2 F.3d 405 (11th Cir. 1993).

## C.    Balance of Harms

For purposes of temporary protective and injunctive relief, Plymouth Medical has sufficiently established that the threatened injury outweighs the harm the relief would inflict on the non-movant because EmCyte is merely being required to return property to which it has no legitimate possessory right.  *See Sewpersaud*, 469 F. Supp. 3d at 1279; *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004).

## D.    Public Interest

Finally, entry of this temporary protective and injunctive relief serves the public interest in protecting trade secrets and enforcing confidentiality obligations, as such protections encourage business investment, innovation, and fair competition.  *See, e.g., Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 908 F.2d 706, 710 (11th Cir. 1990) ("Trade secret law provides protection for commercial intangibles, seeking to prevent exploitation of those intangibles, to encourage innovation, and to maintain standards of commercial ethics.") (internal quotation marks and citation omitted); *Nat'l Staffing Sols., Inc. v.*

11

*Sanchez*, 626 F. Supp. 3d 1247,  255 (M.D. Fla. 2022) ("the public interest is also served by protecting confidential information"); *Sewpersaud*, 469 F. Supp. 3d at 1279 ("the public interest is served by protecting trade secrets and enforcing confidentiality agreements" and by "enforcing reasonable, freely-entered covenants not to compete, which are necessary to encourage business expansion and growth"); *Truepenny People LLC v. Cota*, 2016 WL 9308534, *2 (N.D. Fla. 2016) (finding "that the preliminary injunctive relief requested will serve the public interest by protecting trade secrets, consistent with federal and state law.").

## E.    Security

Whether a bond should be posted and the amount of security is a matter within the discretion of the trial court.  *See Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1127 (11th Cir. 1997).  The Court finds, in its discretion, that Plymouth Medical should be required to post a bond of $1,000.00 as security.  *See* Fed. R. Civ. P. 65(c).

## F.    Notice

Plymouth Medical's counsel certifies in the motion that the original Verified Complaint was sent to counsel for EmCyte immediately after filing, and that the First Amended Verified Complaint and the motion and supporting materials would be sent immediately after filing on March 17, 2026, and that a process server would be directed to expedite service to EmCyte.  The Court

12

finds that because the temporary relief requested is narrowly drawn to protect against use of information obtained from Pinacate and to require it be returned to Plymouth Medical until such time as a hearing can be conducted, it is appropriate to issue a temporary restraining order in the terms set forth below to preserve the status quo.

Accordingly, it is

**ORDERED:**

1.      Plaintiff Custom Compounding Medical LLC d/b/a Plymouth Medical's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 10) is hereby **GRANTED** to the extent that Plaintiff seeks a temporary restraining order.

2.      This Court hereby **TEMPORARILY ENJOINS AND RESTRAINS** EmCyte and all persons acting in concert with EmCyte from:

a) Using, disclosing, disseminating, or otherwise exploiting Plymouth Medical's Trade Secret Information in any way, including but not limited to its client lists, pricing information, sales pipeline data, and order history;

b) Further contacting, soliciting, or communicating with any Plymouth Medical client by using or relying on the Trade Secret Information;

c) Retaining, copying, or failing immediately to return all of Plymouth Medical's Trade Secret Information in any form or medium;

d) Destroying, altering, or concealing any evidence related to the acquisition, misappropriation, or use of the Trade Secret Information; and

e) Engaging in any other conduct that constitutes or facilitates the misappropriation of Plymouth Medical's trade secrets.

3.     The Court further **ORDERS** EmCyte and all persons acting in concert with EmCyte to immediately return to Plymouth Medical all originals and copies of documents and data containing Plymouth Medical's Trade Secret Information.

4.     The Temporary Restraining Order shall remain in effect for two weeks from the date of entry of this Order and expires on **April 1, 2026**, or until such further dates as set by the Court or stipulated to by the parties.

5.     Pursuant to Rule 65(c), Plymouth Medical shall post a bond in the amount of $1,000.00 on or before **March 20, 2026**, as security for payment of damages to which EmCyte may be entitled for a wrongful injunction or restraint.

6.     Immediately upon the entry of the temporary restraining order, Plymouth Medical is **DIRECTED** to serve on EmCyte a copy of the summons, the operative complaint, the motion, a copy of any affidavit and other paper

14

submitted in support of the motion, and a copy of this Order. *See* Local Rules 6.01; 6.02. Plymouth Medical is **DIRECTED** to file proof of service promptly after service is effected.

7.     EmCyte is **DIRECTED** to file a response to that portion of Plymouth Medical's motion requesting a preliminary injunction (Doc. 10) **within seven days after service** of the above-referenced documents.

8.     The Court **DEFERS IN PART** the motion to the extent it seeks a preliminary injunction.

9.     A hearing on Plaintiff's motion to the extent it seeks a preliminary injunction is **SET** for **March 31, 2026, at 9:30 am**.

**DONE** and **ORDERED** in Fort Myers, Florida on **March 18, 2026**, at **3:00 pm**.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record