UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CUSTOM COMPOUNDING LLC
d/b/a PLYMOUTH MEDICAL, a
New York limited liability
company,

      Plaintiff,

v.                                                        Case No.:  2:26-cv-727-SPC-NPM

EMCYTE CORPORATION, a
Florida corporation,

      Defendant.

_____

**OPINION AND ORDER**

Before the Court is Defendant EmCyte Corporation's Motion for Clarification.  (Doc. 73).  Plaintiff Custom Compounding LLC filed a response (Doc. 82), and EmCyte replied (Doc. 91).  For the below reasons, the Court grants the motion.

This case involves Defendant's purported misappropriation of Plaintiff's trade secret business information.  Defendant is a medical device manufacturer that develops, manufacturers, and distributes regenerative medicine products, such as platelet-rich plasma devices used in orthopedic treatments. It sells its products directly to end customers and indirectly through distributors.  Plaintiff was one of Defendant's distributors.  Plaintiff

would purchase Defendant's product for a set price and then sell the product to its own clients for a profit. Roughly sixty-four percent of Plaintiff's sales came from selling Defendant's product line. The remaining thirty-six percent came from business and clients independently generated, *i.e.*, unrelated to Defendant or its products.

Plaintiff alleges a former employee impermissibly downloaded its trade secret client list (among other confidential information) and provided it to Defendant. Defendant in turn used the client list to solicit Plaintiff's customers.[1] The Court granted in part Plaintiff's motion for preliminary injunction. (Doc. 54). In sum, the Court enjoined Defendant from soliciting or conducting business with Plaintiff's independent clients[2] (the roughly thirty-six percent of its business). However, Defendant was not enjoined from soliciting the parties' joint clients (*i.e.*, the clients that purchased Defendant's product through Plaintiff). (*Id.*).

After the Court entered the preliminary injunction, Defendant filed the present motion. (Doc. 73). It claims that, in an effort to comply with the preliminary injunction, it asked Plaintiff for a list of its independent customers, so Defendant knew which clients to avoid. Understandably,

---

[1] Defendant has returned the client list and, thus, no longer had access to it.
[2] The Court only enjoined Defendant from soliciting or conducting business with Plaintiff's independent clients to the extent Defendant was not already conducting business with such clients prior to the alleged misappropriation. (Doc. 54).

Plaintiff balked at this request; it would not willingly turn over the very trade secret information that Defendant allegedly misappropriated. But Defendant's position is well-taken. It cannot be expected to avoid soliciting Plaintiff's clients if it does not know who those customers are. This is a problem.

The Eleventh Circuit has addressed a similar situation. In *American Red Cross v. Palm Beach Blood Bank, Inc.*, both the American Red Cross ("Red Cross") and Palm Beach Blood Bank ("Palm Beach") collected, processed, and distributed blood components. 143 F.3d 1407, 1409 (11th Cir. 1998). The two non-profits competed for sponsors and donors. *Id.* Palm Beach opened a new branch and, in doing so, hired several of Red Cross' personnel. *Id.* One former Red Cross employee took a list of Red Cross donors with her to Palm Beach. *Id.* She used the list to contact and recruit blood donors for Palm Beach. *Id.*

Red Cross sought emergency injunctive relief. The district court entered a preliminary injunction that restrained Palm Beach from, among other conduct, contacting and/or soliciting donations from any donor whose name is contained on Red Cross' donor lists. *Id.* Shortly thereafter, Palm Beach filed an emergency motion for clarification. *Id.* at 1410. It argued that "the injunction appeared to allow Red Cross to determine which of Palm Beach's competitive practices were illegitimate (and which might therefore lead to

3

sanctions for contempt)." *Id.* The Court denied the motion. *Id.* Palm Beach appealed. *Id.*

On appeal, Palm Beach argued the scope of the preliminary injunction was so vague that it violated Federal Rule of Civil Procedure 65(d).[3] The Eleventh Circuit agreed, holding the injunction's condition prohibiting Palm Beach from contacting and/or soliciting donations from any donor whose name appeared on Red Cross' list failed to give Palm Beach "sufficient notice as to what actions the district court mean[t] to prohibit." *Id.* at 1411. The court explained, "[a]lthough at first glance this directive from the district court may seem simple enough, Palm Beach has no way to determine whether a given member of the public might happen to appear on a Red Cross list not in Palm Beach's possession." *Id.* And "[s]ince an ordinary person in Palm Beach's position could not ascertain which members of the public might be off-limits for its recruitment efforts, this provision contravenes Rule 65(d)." *Id.*

The same dilemma persists here. This Court enjoined Defendant from soliciting Plaintiff's independent clients. But without knowing who those clients are, Defendant has no feasible way of knowing which clients to avoid. Consistent with *American Red Cross*, the Court thus agrees with Defendant that its Order, as it currently stands, runs afoul of Rule 65(d)(1).

---

[3] Rule 65(d)(1) requires that an order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."

Plaintiff's argument is opposition misses the mark.  Essentially, it argues that it need not turn over its client list because Defendant can easily ascertain whether a prospective client belongs to Plaintiff.  How?  Well, if the client is not Defendant's, then it must be Plaintiff's customer.  (Doc. 82).  That logic may work in a closed universe in which all possible customers belong to only Plaintiff and Defendant.  But that is not reality.  There may exist many "free agent" customers (so to speak) that Defendant may solicit without violating the preliminary injunction.  Such prospective customers are neither Defendant's nor Plaintiff's clients.  But Defendant would have no way of knowing under the current preliminary injunction.[4]

Of course, Defendant does not need all the information contained in Plaintiff's client list to comply with the injunction.  For instance, to avoid the foregoing pitfall, Defendant only needs the name of Plaintiff's independent clients, not their contact information or any other confidential information.  Additionally, the parties can (if they have not already) enter into a confidentiality agreement to avoid any future use or disclosure of the information.

---

[4] Plaintiff mentions in passing that Defendant could simply ask a prospective client whether he or she is a client of Plaintiff.  (Doc. 82 at 7).  But the Court agrees with Defendant that such a standard is unworkable.

In sum, Plaintiff has a choice.  It can either provide the names of its independent clients to Defendant or the Court will vacate the preliminary injunction as impermissibly vague under Rule 65(d)(1).  Plaintiff has one week to decide.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion for Clarification (Doc. 73) is **GRANTED**.

2. On or before **July 15, 2026**, Plaintiff must file a notice indicating it has provided Defendant with a list of its independent clients as contemplated in the preliminary injunction order (Doc. 54). Otherwise, the Court will vacate the preliminary injunction.

**DONE** and **ORDERED** in Fort Myers, Florida on July 8, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

6